OCTOBER AND NOVEMBER TERM, 1880, No. 73.

## The Humboldt Fire Insurance Company *versus* Mears.

1. When a policy of insurance against fire contained the usual clause against having or keeping benzine, petroleum, etc., on the premises insured, and the evidence was that small quantities of benzine and carbon oil were employed to clean the machinery in the building, the policy also permitting the insured to make repairs, it was held that such use of benzine and carbon oil did not void the policy. What was prohibited was the habitual use of such articles, not their exceptional use on some emergency. Permission to repair the machinery carried with it the right to use such means as might be necessary for that purpose.

2. Whether proofs of loss furnished to an insurance company are sufficient is for the Court; therefore, when such proofs are sufficient, it is immaterial that the Court below instructed the jury that the insanity of the insured excused him from furnishing further proofs.

3. Mears *v.* The Humboldt Fire Insurance Company, 9 W. N. C., 108, affirmed.

ERROR to the Court of Common Pleas, No. 1, of *Allegheny County.*

Assumpsit, by Henrietta Mears, guardian of Thomas Mears, a lunatic, against the Humboldt Fire Insurance Company of Allegheny, on a policy issued to the said Thomas Mears on his mill and distillery in Steubenville, Ohio, for $1500.

Upon the first trial of the case the jury, under the instructions of the Court, rendered a verdict for the defendant. The judgment thereon was reversed by the Supreme Court, and *venire de novo* awarded. (See 9 W. N. C. 108.)

Among other conditions in the policy were the following:

"VOIDS A POLICY: * * * * *

"Or, if the assured shall *keep or have* in any place or premises, where this policy may apply, petroleum, naphtha, benzine, benzole, gasoline, benzine-varnish, or any product, in

whole or in part of either; or gunpowder, fireworks, or nitroglycerin, phosphorus, saltpetre, nitrate of soda; or keep, have, or use camphene, spirit-gas, or any burning-fluid, or chemical oils, without written permission in this policy then, and in every such case, this policy shall be void."

The assured had the right, under the policy, to make all necessary alterations and repairs to the premises.

In May, 1874, a barrel of carbon oil was purchased by Mears and placed in his bonded warehouse, about sixty feet distant from the mill. As much as a gallon of carbon oil was used in cleaning the machinery of the mill. Benzine, in small quantities, was also used for the same purpose. On September 30th, 1874, the insured premises were destroyed by fire. Thomas Mears soon afterward became a lunatic, and proofs of loss were furnished to the company by Henrietta Mears, his guardian. Dr. Thorne was appointed by the company to adjust the loss. He wrote to Mrs. Mears, specifying wherein the proofs furnished were defective, and the proofs were fully amended by her in these respects. The amended proofs, in great detail and by several witnesses, set forth the contents of the mill, their value and the value of the remains. The insurance company demanded still further particulars, and refused to pay the amount insured on the ground that the policy had been voided by the use of benzine and carbon oil on the premises insured.

At the trial the plaintiff asked the Court to charge, (1) That if the assured became insane about the time of the loss, and incapable of making the more specific proofs of loss required by the defendant, he was thereby relieved from compliance with that condition; (2) That if the amended proofs supplied the defects pointed out by the defendant, or its agent, the defendant thereby waived all other informalities; (3) "That the condition of the policy under which the defendant resists a recovery in this action, which provides that 'if the assured shall keep or have in any place or premises where this policy may apply, petroleum, naphtha, benzine, benzole, gasoline, benzine-varnish, or any product in whole or in part of either; or gunpowder, fireworks, nitroglycerin, phosphorus, saltpetre, nitrate of soda; or keep, have, or use camphene, spirit-gas, or any burning-fluid or chemical oils, without written permission in this policy, then, and in every such case, this policy shall be void,' must be interpreted and understood as forbidding only the habitual keeping, storing, or having these articles on the insured premises. Therefore, if the jury find from the evidence that the benzine and carbon oil referred to by the witnesses, were but temporarily or

[The Humboldt Fire Insurance Company *v.* Mears.]

occasionally upon the insured premises, or were only used for the purpose of cleaning machinery and needful light, then, and in that case, such temporary and occasional use does not avoid the policy."

These points were affirmed.

The Court (COLLIER, J.) charged the jury as follows:

"The first proof of loss that was furnished I do not think came up to the reasonable particularity required. For instance, there was a copper column put down in the proofs at a large sum; that was hardly particular enough; then, some other articles were put down at large amounts, giving the company no opportunity to inquire about them, although the covenant states what should be said. I do not think anybody would suppose that that would be called a fair representation of a proof of loss; and, if it stood there, the plaintiff could not recover. But, gentlemen, if the evidence is believed on the part of the plaintiff, that Dr. Thorne was appointed agent to adjust this loss, by this insurance company, as well as by the others, and in pursuance of that appointment went to Steubenville, investigated the loss, came back and presented the objections he had to the first proof of loss, and if you believe he was acting for the company, and believe his testimony, that he wrote down his objections to the first proof of loss (that it was not specific enough, was not a fair paper), and specified wherein, and then sent those objections or gave them to Mrs. Mears, who was acting for her husband, and she made this second proof of loss, complying with what he had objected to and meeting those objections, then, if that was the case, the two papers together would make a perfectly good proof of loss under this policy. It would estop the company from objecting to it; that is, the two proofs of loss together are sufficient.

"But, suppose you should not think Dr. Thorne's testimony true, then another question arises: Was Mr. Mears insane at that time? If he was, that would dispense with the making of any proof of loss at all, and if his wife made the best she could under the circumstances it would be good enough. Either of those questions decided in favor of the plaintiff would make the proof of loss good. And if you so find you should render a verdict for the plaintiff for the amount of loss he has proved. He must prove his loss, however. The proof of loss does not make out the case; he has to furnish them, but he must prove the loss of the goods and their value, and if you believe the evidence as to that your verdict should be for the amount of the loss; if it comes up to the full amount of the policy you give the $1500, with interest; if less, you give whatever it was, but,

[The Humboldt Fire Insurance Company *v.* Mears.]

it seems, if the proof is to be believed, he lost the whole amount.

*        *        *        *        *

" The first defence set up is, that one of the covenants in this policy requires that if the assured shall 'keep or have,' in any place on the premises covered by this policy, 'petroleum, benzine,' etc., 'or any product of petroleum, benzine, gunpowder, fireworks, or saltpetre,' the policy shall be void.

*        *        *        *        *

"Now, it is necessary for the Court to tell you what 'keep or have on the premises' means. It means the keeping or having habitually, regularly, on the premises. It does not mean to take it in to polish furniture or grease a little piece of machinery. If he took a can, or two or three cans, or a dangerous amount in, and kept it there, using it when he pleased, keeping it regularly, that would be a direct violation of this condition of the policy. But taking in small quantities for the ordinary purposes of life would not void the policy. I am relieved from any difficulty as to that. The Supreme Court, in this very case, has construed that. This is what they say on this very clause of the policy: 'The words keep or have, as applied to petroleum or benzine, evidently were intended to prevent the storage of the prohibited articles upon the premises, either permanently or habitually. While the words are used in the disjunctive, they are evidently synonymous, and signify retaining in possession. It would be straining a point to say that bringing a prohibited article upon the premises on a single occasion, and for the sole purpose of cleaning machinery, was keeping or having it there within the meaning of the policy.'

*        *        *        *        *

" The next defence is upon another clause, which says he shall not only not keep or have it in possession on the premises habitually, but if the assured use camphene, spirit-gas, or any other burning-fluid or chemical oils, without the written permission given in this policy, it shall be void. They invoke that clause and say this plaintiff used benzine, which was of an explosive and dangerous nature.

*        *        *        *        *

" It was expressly agreed he should not use it. But that has an explanation. You might suppose, to construe the words literally, that he could not use a drop of benzine for any purpose under that clause. The Supreme Court holds that that must be construed liberally, too. They use these

[The Humboldt Fire Insurance Company *v.* Mears.]

words : ' We are not disposed to give the word " use " in this policy the narrow construction claimed for it. It must have a reasonable interpretation, such as was probably contemplated by the parties at the time the contract was entered into. Nearly every policy of insurance issued at the present time contains this condition, or a similar one. What is intended to be prohibited is the habitual use of such articles, not the exceptional use upon some emergencies. The strict rule claimed by defendant would prevent the assured from painting his house, or cleaning his furniture in the house, as it would be difficult to do either without some of the prohibited articles. If the company intended the condition to cover such exceptional uses it ought to have been plainly expressed and probably would have been.' "

A verdict was rendered for the plaintiff for the full amount, with interest, and judgment entered thereon; whereupon the writ of error was taken, the charge and the answers to plaintiff's points being assigned for error.

*Thomas M. Marshall* and *Schoyer & McGill*, for plaintiff in error.

The insanity of Mears was no excuse for failing to make the proof of loss prescribed by the policy. Where the duty is not created by law, but by contract, if performance is rendered impossible the insured must suffer: Flanders on Insurance, page 578 ; Wheeler *v.* Insurance Co., 82 N. Y. R., 550 ; Harmony *v.* Bingham, 12 N. Y. R., 99, 107 ; Dwight *v.* Williams, 4 McLean (U. S. 581).

*Weir & Gibson* and *J. Dunbar.* for defendant in error.

Insanity excuses from compliance with the condition in the policy : Insurance Company *v.* Boykin, 12 Wallace, 436.

By specifying defects the company waived objection to those not specified: May on Insurance, p. 575 ; Ayres *v.* Hartford Insurance Company, 17 Iowa, 176 ; Young *v.* Insurance Company, 45 Iowa, 377.

OCTOBER 24TH, 1881,—PER CURIAM: Whether preliminary proofs of loss have been actually given to the insurance company is a question of fact for the jury. Whether the proofs furnished are sufficient is for the Court. There is no question that proofs of the loss were furnished ; the only point made was as to their sufficiency. We are of opinion that the amended proofs of loss were sufficient. This being the case, the point of the effect of the insanity of the insured, raised in the plaintiff's second point, was immaterial.

The answer of the Court may be conceded to have been wrong, but it did no harm to the plaintiff in error.   As to the other assignments, as to the keeping and using benzine or other inflammable oils on the premises, the answers to the points, and the instructions of the Court in the charge, were altogether accordant to the opinion of this Court when the case was here before: 9 W. N. C., 108.

Judgment affirmed.